JOHN V. WEICHEL, APPELLEE, V. HAROLD L. LOJKA, APPELLEE, IMPLEADED WITH NEBRASKA PRESTRESSED CONCRETE CO., APPELLANT.

179 N. W. 2d 112

Filed August 21, 1970.  No. 37514.

Chambers, Holland, Dudgeon & Beam, for appellant.

Nelson, Harding, Marchetti, Leonard & Tate and Richard H. Williams, for appellee Weichel.

William F. Matschullat, for appellee Lojka.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, SMITH, McCOWN, and NEWTON, JJ., and COLWELL, District Judge.

COLWELL, District Judge.

This is a suit to recover damages caused by a collision on Cornhusker Highway near Lincoln, Nebraska, between a pickup truck owned and operated by plaintiff, John V. Weichel, and a 1956 Plymouth sedan owned and operated by the defendant Harold L. Lojka, hereafter called Lojka. At the conclusion of the evidence the defendant, Nebraska Prestressed Concrete Company, hereafter called Prestressed, moved for a directed verdict, which was denied. The jury returned a verdict in favor of the plaintiff against both defendants for $56,432. Defendant Prestressed appeals from the denial of its motion for a new trial or in the alternative for judgment notwithstanding the verdict.

Prestressed manufactures concrete products on the outskirts of Lincoln, Nebraska. In the early fall of 1967, it experienced a labor shortage. Claude Weimer, production manager for Prestressed, went to Scottsbluff, Nebraska, more than 400 miles distant from Lincoln, to recruit laborers, using the facilities of the Nebraska State Employment Office there. Twenty-three prospective male employees were offered jobs at the Prestressed plant at Lincoln; 22 of them later reported; and they all understood that their employment with Prestressed did not begin until they reported for work at the plant in Lincoln, and "punched the time clock." Most of these men did not have sufficient funds and the means to sustain themselves for either travel, food, or lodging enroute to Lincoln, Nebraska, or after they arrived there; those without transportation were offered bus

fare or travel in available private cars; and those men having automobiles were encouraged to drive them to Lincoln. Six of the men, including defendant Lojka, drove their own cars to Lincoln; Prestressed provided 1 man with travel by air and bus fare for 9 men; and 7 of the men were passengers in private cars. Lojka was a deaf-mute, age 33 years; all communication with Lojka was by written question and answer; he elected to drive his own car to Lincoln; and Weimer advanced him $15 to cover gas and oil. Later, Lojka agreed with Weimer to take three of the other men, Dan Knaub, Carl C. Reiber, and William W. Hall, to Lincoln as passengers, since none of them had funds or the means for such travel. There is conflict in the evidence whether Lojka was to be paid additional money to transport the three men to Lincoln. Weimer saw the 1956 Plymouth but did not examine it. Lojka exhibited to Weimer his current valid Nebraska operator's permit which reflected no limitations or notations of any traffic violations. The records of the Nebraska Motor Vehicle Department at Lincoln reflect that between 1958 and August 7, 1967, Lojka had 9 accidents, the nature of which were not shown by the evidence, and prior to September 6, 1967, Lojka had two convictions for minor traffic violations. The evidence shows that Lojka admitted that the turn signals on his car were not operating and that the brakes did not function properly.

Lojka left Scottsbluff in his car with the three passengers at about 10 a.m. on September 5, 1967. Lojka was given a map by Weimer with penciled directions to the Prestressed plant in Lincoln. All of the four men were to report for work at the Prestressed plant the following morning. Lojka and his three passengers arrived without incident at the Prestressed plant about 9 p.m. the same day. A plant employee of Prestressed arranged and paid for their food and lodging that night and breakfast the next morning at a nearby motel.

The next morning shortly before 7 a.m. Lojka, accom-

panied by Knaub, Reiber, and Hall, was enroute to the Prestressed plant driving his car in an easterly direction on Cornhusker Highway. Ahead of Lojka's car in the same lane of traffic was a car stopped with turn signals operating indicating a left-hand turn. Lojka admitted that without signaling or stopping he turned his car left across the centerline of the highway into the westbound traffic lane and drove into the front end of plaintiff's pickup truck operated by the plaintiff in a westerly direction. Lojka admitted that he did not see the Weichel pickup until just before the collision. Plaintiff suffered personal injuries and damages to his pickup truck.

Plaintiff contends that: (1) Lojka was an independent contractor serving Prestressed; (2) that this relationship existed at the time of the collision; (3) that Prestressed was negligent in selecting and employing Lojka as an independent contractor; and (4) that the negligence of Prestressed was the proximate cause of the accident and the resulting injuries to the plaintiff.

Appellant Prestressed urges that the trial court erred in overruling its motion for a directed verdict at the close of the evidence.

The record supports a jury question that at the time Lojka left Scottsbluff for Lincoln he was an independent contractor serving Prestressed. We consider whether or not Lojka was an independent contractor at the time of the accident. The original arrangement between Lojka and Prestressed was an offer of a job made by Weimer. Lojka agreed to travel to Lincoln for this purpose and accepted $15 to cover the expense of gas and oil. There was no obligation on the part of Lojka to either go to Lincoln, or, if he did, to enter into the employment of Prestressed. As stated by Weimer it was a "faith" proposition that the men contacted would show up for work at the Lincoln plant. Later, this relationship betwene Lojka and Prestressed was expanded to include the transportation of Knaub, Reiber, and Hall.

The agreement between Lojka and Prestressed was to transport Lojka, Knaub, Reiber, and Hall to Lincoln, Nebraska, as shown by the following excerpts from Lojka's testimony and admissions offered by plaintiff: "Q. On September 5, 1967, you talked in Scottsbluff, Nebraska, to a Mr. Claude Weimer of Nebraska Prestressed Concrete Co. with regard to going to Lincoln to work for Nebraska Prestressed Concrete Co? A. True. Q. You were asked to and you agreed to transport three passengers to Lincoln in your car for the benefit of Nebraska Prestressed Concrete Co. in order that they might be employed by said company? A. True. Q. You arrived in Lincoln on the evening of September 5, 1967, and proceeded to the Nebraska Prestressed Concrete Co. plant? A. True. Q. Upon arrival at the plant you were directed to a motel where arrangements had been made for you and your three passengers to spend the night? A. True. Q. Did anyone there at the plant tell you to go to a motel or hotel and take the others there with you, and to all come back in the morning? A. Yes. Q. You were asked if you, or any of the four of you, needed transportation to the plant the following morning. A. True. Q. You replied that you would not, that you had your automobile. A. True. Q. You stated that you would bring the other three, Knaub, Reiber and Hall. A. True."

An independent contractor and an agent are similar in many respects, the difference turning on the degree of control over them. By analogy we apply the rule: "It sometimes happens that an agency is limited to some particular object or the accomplishment of some particular transaction. Such an agency is terminated by the completion of the transaction for the accomplishment of which it was created * * *." 3 Am. Jur. 2d, Agency, § 36, p. 441. Lojka's agreed purpose and object was to transport three men to Lincoln, Nebraska, at most to the Prestressed plant there; this purpose was complete when Lojka arrived at the plant the first time on September

5th; at that time Lojka's status as an independent contractor terminated; and thereafter Lojka's carriage of the three men was gratuitous.

Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred. It is not sufficient that the negligence charged furnishes only a condition by which the injury is made possible, for if such condition causes an injury by the subsequent independent act of a third person, the two acts are not concurrent and the existence of the condition is not the proximate cause of the injury. Knuth v. Singer, 174 Neb. 182, 116 N. W. 2d 291; Jarosh v. Van Meter, 171 Neb. 61, 105 N. W. 2d 531, 82 A. L. R. 2d 714.

The evidence of the proximate cause of the accident is contained in Lojka's admissions: "Q. You were making a left turn across the north lane of Cornhusker Highway when your automobile was in collision in the north lane of Cornhusker Highway with a pickup truck proceeding in a westerly direction in said north lane? A. True. Q. You turned left without giving a left turn signal? A. True. Q. You did not see the Weichel pickup truck when you made a left turn and until just before the collision? A. True." There is no evidence in the record that either the poor mechanical condition of Lojka's car, no turn signals, faulty brakes, Lojka's inability to hear, or his driving record were either the cause or contributed to the cause of the collision and the resulting injuries to the plaintiff. Plaintiff urges that proximate cause is established by the testimony of passenger Reiber that he saw the pickup truck approaching just prior to the accident, recognized the danger, but could not warn Lojka of the danger because Lojka was deaf. Reiber did nothing. We reject this contention. The proximate cause of the collision was the failure of Lojka to maintain a lookout and to see plaintiff's pickup truck.

"In every case, before the evidence is submitted to the

jury, there is a preliminary question for the court to decide, when properly raised, not whether there is literally no evidence, but whether there is any upon which a jury can properly proceed to find a verdict for the party producing it, upon whom the burden of proof is imposed." Hickman v. Parks Constr. Co., 162 Neb. 461, 76 N. W. 2d 403, 62 A. L. R. 2d 1040.

"In a case where a motion has been made at the close of all of the evidence for a directed verdict, which motion should have been sustained but was overruled and the case submitted to a jury which returned a verdict contrary to the motion, and a motion for judgment notwithstanding the verdict is duly filed, it is the duty of the court to sustain the motion and render judgment in accordance with the motion for a directed verdict." Corbitt v. Omaha Transit Co., 162 Neb. 598, 77 N. W. 2d 144.

At the conclusion of all the evidence, the motion of defendant Nebraska Prestressed Concrete Company for a directed verdict as to that defendant should have been sustained. The judgment of the district court as to defendant Nebraska Prestressed Concrete Company is reversed and the cause remanded in accordance with this opinion.

REVERSED AND REMANDED.