LEONARD L. DANIELS, BY AND THROUGH CHARLES JONES, HIS BROTHER AND NEXT FRIEND, APPELLEE, V. RICHARD R. ANDERSEN ET AL., APPELLEES, IMPLEADED WITH CITY OF OMAHA, A MUNICIPAL CORPORATION, APPELLANT.

237 N. W. 2d 397

Filed December 31, 1975. No. 39945.

Herbert M. Fitle, James E. Fellows, and Timothy M. Kenny, for appellant.

John T. Carpenter of Matthews, Kelley, Cannon & Carpenter, for appellee Daniels.

Heard before WHITE, C. J., SPENCER, BOSLAUGH, McCOWN, NEWTON, CLINTON, and BRODKEY, JJ.

WHITE, C. J.

This is a negligence action brought against members of the Omaha police department and the City of Omaha, Nebraska. The District Court, sitting without a jury, found for the plaintiff and awarded him $200,000 in

damages. The defendant city appeals. We affirm the judgment of the District Court.

The plaintiff, Leonard L. Daniels, a 50-year-old male, was arrested by members of the Omaha police division on September 21, 1970, and booked on the charge of "drunk-no prosecution." It is the practice of the Omaha police division to arrest persons who are so intoxicated that they are in danger of injuring themselves. These persons are confined in what is referred to as the "drunk tank." When sober, they are released without formal charges. After the plaintiff was confined in the drunk tank, an intoxicated man by the name of Watson was placed in the drunk tank. Watson proceeded to go through the pockets of the other inmates, and then without any provocation, he punched the plaintiff in the head and also kicked him once. As Watson then moved around the cell, one of the other inmates, Kinstler began pounding on the window of the drunk tank, fearing that he was in danger. After some period of time, perhaps as much as 15 minutes, Watson, an ex-professional prize fighter and an escapee from a mental institution, returned to attack the plaintiff again. Watson picked plaintiff up and threw him on his head. Watson then kicked the plaintiff four or five times in the head. The plaintiff was finally discovered by one of the jailers when he opened the door to the drunk tank to place another drunk in the cell. Upon being taken to the hospital, it was discovered that the plaintiff had suffered a broken jaw and a severe brain injury. Since the injury, the plaintiff has not been able to talk or to remember anything. He cannot reason, and his physical abilities such as walking are severely limited. There was medical testimony to the effect that the plaintiff's condition will never improve, and that he will always require total custodial care.

Leonard L. Daniels, through his brother, Charles Jones, brought this negligence action against the City of Omaha, under the Political Subdivisions Tort Claims

Act, sections 23-2401 to 23-2420, R. R. S. 1943, alleging that the City of Omaha negligently caused him to be severely beaten while in the defendant's custody. The District Court found for the plaintiff and awarded him $200,000 in damages. The defendant appeals that decision, arguing first, that it was not liable for the plaintiff's injuries, and second, that the damage award was excessive.

"In determining the sufficiency of the evidence to sustain a judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he is entitled to the benefit of every inference that can reasonably be deduced from the evidence." Lucht v. American Propane Gas Co., 183 Neb. 583, 162 N. W. 2d 891 (1968). See, also, Thompsen v. Miller, 177 Neb. 530, 129 N. W. 2d 498. Moreover, under the Political Subdivisions Tort Claims Act, section 23-2406, R. R. S. 1943, the "findings of a District Court under the act will not be disturbed on appeal unless they are clearly wrong." Craig v. Gage County, 190 Neb. 320, 208 N. W. 2d 82.

An essential element in any negligence action is a duty recognized by law which the defendant owes to the plaintiff. It is a basic principle of law that a jailer has a duty to exercise that degree of care necessary to provide reasonably adequate protection for his prisoners. See, 60 Am. Jur. 2d, Penal and Correctional Institutions, § 17, p. 821; Restatement, Torts 2d, § 320, p. 130. What is reasonable care of prisoners depends on the circumstances of each case. See O'Dell v. Goodsell, 152 Neb. 290, 41 N. W. 2d 123.

In the case at hand, the plaintiff was intoxicated. He was arrested for his own protection and placed in the "drunk tank." By being placed in the "drunk tank," Daniels was deprived of one basic method of self-protection - that of escape. Thus, being intoxicated and having no means of escape, Daniels possessed little ability to protect himself. The police are not insurers of

a prisoner's safety, but when a prisoner is intoxicated, a jailer has a duty to use a high degree of care to insure the prisoner's protection. The concept that a police officer owes a higher standard of care to an intoxicated prisoner has been recognized in other jurisdictions. In Barlow v. City of New Orleans, 228 So. 2d 47 (La. App., 1969), affirmed 257 La. 91, 241 So. 2d 501, the plaintiff, an intoxicated prisoner, was left unattended in the back seat of a police car which was locked in such a way that the prisoner could not escape. A fire broke out in the police car and the plaintiff was injured. The court said: "From our jurisprudence has evolved a principle of law that imposes upon a police officer the duty to exercise reasonable and ordinary care and diligence to prevent injury to a prisoner in his custody; * * *. The jurisprudence also supports the principle that in the case of an intoxicated prisoner the police officer is impelled to use a higher degree of care for his safety and protection than is necessary or expected in the case of one who has control of his physical and mental faculties and able to protect himself."

In this case not only was the plaintiff defenseless due to his condition, but as Lt. Hartquist, the detention commander, testified, fights between prisoners in the drunk tank were to be expected.

The crucial question to be decided is: Does the evidence support the finding that the defendant violated the high standard of care owed to the plaintiff? The District Court, on the facts, has already determined that the defendant breached its duty toward the plaintiff. That determination can be set aside only if the evidence shows it to be clearly wrong. We hold that there is sufficient evidence in the record upon which the trial court could have based its decision that the defendant was negligent.

First, the District Court might have based its decision upon the failure of the defendant to conduct a sufficient number of physical inspections of the drunk

tank. The drunk tank was constructed with the idea of having it monitored with two television cameras and one audio monitor. Thus, the jailers could see into and hear from the drunk tank without leaving the jailer's office. However, due to the accoustics of the drunk tank, the audio monitor was useless, and on the night of the plaintiff's injury, was not turned on. In addition, one of the television cameras was not functioning; although a repair order had been made. The sole remaining camera could not view that part of the cell where the plaintiff was attacked. The jail rules required a "constant" watch of the monitors. The jail rules also required an hourly inspection of the jail cells. If the rules demanded hourly inspections along with "constant" monitoring, it would be reasonable to assume that with the audio monitor and one of the two cameras not functioning, reasonable care would dictate that there would be more than one inspection every hour, particularly in the drunk tank where fights were predictable. In fact, Mr. Devere, who was the deputy chief of police in 1970 and in charge of the maintenance and control of the jail, testified that if the monitors were not functioning, good police practice would require more than one hourly inspection. Yet, even with the monitors out, the jailers did not make more than one hourly physical inspection, except for the limited check made incidental to the placing of additional prisoners in the drunk tank. The District Court could have reasonably concluded that due to the malfunctioning of the monitors, the jailers were negligent in not conducting more frequent inspections of the drunk tank.

Second, the District Court might have based its determination of negligence on the failure of the jailers to hear one of the prisoners, Kinstler, pounding on the window of the drunk tank. After Watson had attacked the plaintiff the first time, Kinstler began pounding on the window of the cell, fearing that the crazed Watson might attack him next. There is evidence that

Kinstler might also have yelled for help. Lt. Hartquist testified that jailers could easily hear a prisoner calling for help without the aid of an audio monitor. Thus, if Kinstler was pounding on the window and calling for help, and for purposes of review we must accept these assertions as facts, the jailers should have heard both the pounding and the yelling, and subsequently investigated. The fact that the monitors were not functioning properly is all the more reason for the jailers to have been alert for unusual noises. Certainly the District Court was not clearly erroneous in believing that the jailers should have been able to hear a frightened prisoner pounding and yelling in an attempt to get help.

Once the defendant's negligence has been established, it is necessary to find that the plaintiff's injuries were proximately caused by the defendant's negligence. In Weichel v. Lojka, 185 Neb. 819, 179 N. W. 2d 112, this court said: "Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred." See, also, Coyle v. Stopak, 165 Neb. 594, 86 N. W. 2d 758.

There are three basic requirements in establishing proximate cause. The first requirement is that the negligence be such that "without which the injury would not have occurred," commonly known as the "but for" rule. See Weichel v. Lojka, *supra*. This argument is referred to as the cause in fact. See 57 Am. Jur. 2d, Negligence, § 142, p. 497. It is clear in this case that the defendant's negligence was the cause in fact of the plaintiff's injury. The plaintiff was attacked twice by Watson. In the first attack, Watson punched the defendant once and then kicked him once. In the second attack, Watson picked up the plaintiff and threw him on his head. Watson then proceeded to kick the plaintiff four or five times in the head. It was certainly reasonable for the District Court to believe that

the second attack caused the plaintiff's injuries. If the defendant had not been negligent, Watson would not have had the opportunity to attack the plaintiff a second time. After being alerted to the plaintiff's condition after the first attack, either by Kinstler's pounding and yelling or by a physical check of the cell, the jailers would have surely removed both the plaintiff and Watson from the cell, thereby preventing the second and more severe attack. Therefore, but for the defendant's negligence, the plaintiff would not have suffered his injuries. Thus, the first requirement of proximate cause, the "but for" rule, was fulfilled.

The second requirement is that the injury be the natural and probable result of the negligence. See 57 Am. Jur. 2d, Negligence, § 164, p. 527.

In the instant case, it is clear that plaintiff's injuries were the natural and probable result of the defendant's negligence. The reason that the jailers were negligent in not checking the cells more often and in not hearing a prisoner pound on the cell window, was that the jailers should have anticipated fights in the drunk tank. Lt. Hartquist testified that there was a substantial danger of fighting between prisoners in the drunk tank. Thus, since the possibility of a fight was the danger which the defendant should have guarded against, the occurrence of a fight and its consequences are certainly the natural and probable result of the defendant's negligence.

The third requirement is that there be no efficient intervening cause. The defendant contends that the attack by Watson was an efficient intervening cause so as to relieve the defendant of liability. That contention has no merit. As this court stated in Johnson v. Metropolitan Utilities Dist., 176 Neb. 276, 125 N. W. 2d 708: "If the original negligence is of a character which, according to the usual experience of mankind, is liable to invite or induce the intervention of some subsequent cause, the intervening cause will not excuse it, and the subsequent mischief will be held to be the result

of the original negligence." The District Court could have found that the failure to properly monitor the drunk tank was evidence of the defendant's negligence in that it invited the first beating or intervention by Watson, and it could further have found that the second and more violent beating and intervention by Watson was foreseeable since such fights in the drunk tank were to be expected, as Lt. Hartquist had testified. We come to the conclusion that all three elements of proximate cause being present in the context of this case, there was sufficient evidence to support the finding that the defendant's negligence was the proximate cause of plaintiff's injuries.

The only remaining issue is that of damages. The District Court, sitting as the trier of fact, awarded the plaintiff $200,000. It appears that the District Court based its assessment of damages, in part, on the testimony of Dr. Turner, an economist. The defendant contends that Dr. Turner's analysis is erroneous in that first, in calculating the present value of lost future income and future expenses, Dr. Turner used a discount rate, 6 percent, which is too low, and second, Dr. Turner's calculation of future earning capacity is not truly representative of the plaintiff's lost future income.

As for the contention that the discount rate of 6 percent was too low, the plaintiff introduced evidence which indicated that 6 percent was a conservative yet reasonable rate to discount future income and expenses. This court cannot say that the District Court was clearly erroneous in using a 6 percent discount rate.

The contention that the lost future income was incorrectly calculated need not be decided. There was evidence at the trial that the future medical and nursing expenses alone, discounted to present value, amounted to more than $200,000. In addition, there was ample evidence to support an award of damages for pain and suffering. In Horky v. Schroll, 148 Neb. 96, 26 N. W. 2d 396, this court said: "A verdict may be set aside as

excessive * * * on appeal when, and not unless, it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record * * *." There was credible evidence at the trial to substantiate an award of $200,000, and therefore the award cannot be said to be clearly exorbitant.

The judgment of the District Court is correct and is affirmed.

AFFIRMED.