273 N.W.2d 680 (1979)
202 Neb. 86
Darlene BRAHATCEK, Legally Appointed Administratrix of the Estate of David Wayne Brahatcek, Appellee,
v.
MILLARD SCHOOL DISTRICT, SCHOOL DISTRICT # 17, a Corporate Governmental Body, Appellant.
No. 41710.
Supreme Court of Nebraska.
January 10, 1979.
*682 Michael P. Cavel and Lee H. Hamann of The Law Offices of Emil F. Sodoro, P. C., Omaha, for appellant.
John T. Carpenter of Carpenter, Fitzgerald & Coe, P. C., Omaha, for appellee.
Heard before SPENCER, C. J., Pro Tem., BOSLAUGH, McCOWN, CLINTON, BRODKEY, and WHITE, JJ., and COLWELL, District Judge.
SPENCER, Chief Judge, Pro Tem.
This is a wrongful death action brought by Darlene Brahatcek as administratrix of the estate of her son, David Wayne Brahatcek, hereinafter called David, against Millard School District No. 17. David died as a result of being accidentally struck in the left occipital region of his skull by a golf club during a physical education class. Trial was had to the court. The District Judge entered judgment in favor of the plaintiff in the amount of $3,570.06 special damages, $50,000 general damages, and costs. Defendant appeals.
*683 Defendant essentially alleges four assignments of error: (1) The insufficiency of the evidence; (2) the failure to find decedent contributorily negligent; (3) the failure to hold the negligence of the classmate who struck decedent was an intervening cause of death; and (4) the award of general damages was excessive. We affirm.
David, who was a ninth grade student 14 years of age, was injured on April 3, 1974, during a physical education class conducted in the gymnasium of Millard Central Junior High School. He was struck by a golf club swung by a fellow student, Mark Kreie. He was rendered unconscious and died 2 days later without regaining consciousness.
Mandatory golf instruction during physical education classes at the school began on Monday, April 1, 1974. Because decedent was absent from school on that day, his first exposure to the program was when his class next met on Wednesday, the day of the accident. Classes on both dates were conducted in the school gymnasium because of inclement weather. Instruction was coeducational. Decedent's class of 34 boys combined with a girls' physical education class having an enrollment of 23. Two teachers, one male and one female, were responsible for providing supervision and instruction. The faculty members present on Monday were Max Kurtz and Vickie Beveridge, at that time Vickie Lindgren.
On Monday, after attendance was taken, the students were gathered around in a semicircle and received instruction on the golf grip, stance, swing, etiquette, and safety. Mr. Kurtz then explained to them the procedure that would be followed in the gym.
With the bleachers folded up, the gym was nearly as wide as it was long. Approximately 12 mats were placed across the width of the gym, in two rows of six each. One row of mats was located in the south half of the gym about even with the free throw line on the basketball court. The other row was placed along the free throw line in the north half of the gym. The mats measured about 2 feet square and were spaced 10 to 12 feet apart. Each row contained approximately six mats. A golf club and three or four plastic "wiffle" balls were placed by each mat.
The students were divided into groups of four or five students and each group was assigned to the use of one of the mats. The boys used the mats on the south side of the gym and hit in a southerly direction. The girls used the mats on the north, and hit the golf balls in a northerly direction. At the start of the class all of the students were to sit along the center line of the basketball court between the two rows of mats. On the signal of one of the instructors one student from each group would go up to the assigned mat, tee up a ball, and wait for the signal to begin. After the student had hit all of the balls on the mat he was to lay the club down and return to the center of the gym. When all of the students were back at the center line, the next student in each group was directed to retrieve the balls and the procedure was repeated.
Mr. Kurtz was not present for class on Wednesday, the day of the accident, because his wife had just given birth to a baby. His place was taken by a student teacher, Tim Haley, who had been at the school for approximately 5 weeks and had assisted with four to six golf classes on Monday and Tuesday. At the beginning of the class on Wednesday, Mrs. Beveridge repeated the instructions which had been given by Mr. Kurtz on Monday. The groups were again divided. One student went up to each mat and Mrs. Beveridge testified she gave the signal for the first balls to be hit.
Plaintiff's decedent, who prior to the date of his death had never had a golf club in his hands, was either the second or third student to go up to the easternmost mat on the boys' side of the gym. He had difficulty and asked his group if anyone could help him. Mark Kreie, who had been the last to use the club, came forward and showed decedent how to grip the club and told him that he (Kreie) would take two practice swings then hit the ball. Decedent moved to the east and stood against the folded up bleachers about 10 feet to the rear of Kreie. *684 Kreie looked over his shoulder to observe decedent before taking two practice swings. He then stepped up to the ball and took a full swing at it. Unaware that decedent had moved closer, he hit decedent with the club on the follow-through. During all of this time, Mr. Haley was helping another boy a few mats away. Mark did not know whether Mr. Haley saw decedent and him standing together at the mat. Mrs. Beveridge was positioned along the west end of the girls' line.
Mark Kreie testified Mrs. Beveridge gave instructions to the students as to the proper use of the clubs. They were also told to remain behind a certain line on the gym floor when they were not up at the mats. He also testified on Wednesday Mrs. Beveridge told them they were to help any of the students who didn't understand. Mrs. Beveridge denied making this statement. The fact that the deceased asked for help of the students might support Kreie's statement.
Mrs. Beveridge testified she was in charge of the entire class on Wednesday but after telling the students when they could hit the ball, she concentrated on the girls. At the time of the accident she was standing on the west side of the gym, between the center line and the row of girls' mats. She testified that had she seen Mr. Haley devoting all of his attention to one boy she would have watched the entire class. She did not instruct Mr. Haley prior to class that he should not spend too much time with one student. Neither did she see the decedent get hit.
Mr. Haley, who was a second semester senior at Wayne State Teachers College, had been student teaching at Millard Central Junior High School for approximately 5 weeks. He testified he told the boys when to start and Mrs. Beveridge told the girls. He testified during the class he walked up and down between the boys standing at the mats and those seated at the center of the gym. A short time after the first student went up to the mats a few boys in decedent's group stood up, although not close to the mats. He told them to sit down and they complied. At the time of the accident Mr. Haley was giving individualized instruction to a boy near the middle of the gym. He did not see decedent get hit.
David Thompson, who was in the group with decedent and Mark Kreie, testified he was in the class on both Monday and Wednesday, although the attendance records indicate he was absent on Monday. He stated instructions were given on Monday but not on Wednesday. On Wednesday, the students were standing and talking between groups. From the beginning of class until the time of the accident, Mr. Haley and Mrs. Beveridge were holding a discussion in the southwest portion of the gym in front of the door to the girls' locker room. Defendant points out that standing in this location would have placed them in the line of flight of golf balls being hit by the boys.
Thompson testified decedent was the fourth or fifth in the group to go to the mat. He was having some trouble so Mark Kreie, who had just finished hitting, returned to the mat and took the club to show decedent the grip and stance. Decedent then moved a couple of feet behind Mark and to his right while Mark took two practice swings. Mark then attempted to take a full swing but he hit decedent while bringing the club back. This testimony, that decedent was hit during the back swing, is contrary to the testimony of Mark Kreie, and inconsistent with the physical evidence that decedent was struck on the left side of the back of his head. There are other inconsistencies between his deposition and trial testimony. He admitted his recollection was hazy. The trial was held 3 years after the accident.
Mark Kreie stated he was simply doing what Mrs. Beveridge instructed, namely to assist a student in need. During his instruction of David he did not receive any warning or admonition from either teacher. During the class various students from each group were intermingling around the court, visiting with each other. Mrs. Beveridge did not hear what instructions, if any, student teacher Haley gave his charges and did not see the incident which led up to the fatal injury of David.
*685 Ike F. Pane, principal of Millard Central Junior High School, testified golf was a mandatory course of instruction. Golf instruction was provided to ninth grade students in April of 1974, with the first class on Monday, April 1, 1974. Pane identified exhibit 9 as his school's written rules of instruction which stated the objectives to be achieved in teaching golf to the ninth grade class, and specifically setting forth in what manner or procedure the instruction was to be undertaken and achieved. The objectives were to develop the skills and appreciation for the sport of golf, with the coequal consideration that the instruction be accomplished with safety. On page 2 of exhibit 9, the following appears: "Safety should be stressed at all times, especially when you are rained out. If in the gym, one can set up stations on the floor along one side of the bleachers, divide all students into that many stations and have them sit on the outstretched bleachers on the opposite side. Have the first person hit four or five balls, (sic) to the second person across the gym. When the first is done hitting, he will go to the end of his group and the second person hits and the third retrieves the ball and so on."
On the next page of exhibit 9, the following appears under "Safety Hints": "1. Never hit a shot until you are sure those in front of you are out of your range. If you hit another player, you may be liable for damages. 2. Never swing a club, especially on the tees, unless you are sure no one is standing close to you."
Pane testified he approved of exhibit 9 and the procedure set forth therein, and that it was his understanding the instruction was undertaken in conformity with exhibit 9. However, after David's fatal injury he discovered that the physical arrangements for instruction were quite different than that specified.
Pane acknowledged that if the instructions had been followed it would have been difficult to have two people on a mat at the same time. It was not until after the accident that he realized the arrangement was different from what was recommended. He recognized that in any of the areas where there might be danger there is a potential for harm if the students were not properly supervised. If the procedure recommended had been followed, it would have made it more difficult for another student from the group to walk across the width of the gymnasium. It was Mr. Kurtz and Mrs. Beveridge who decided to vary the placement of the mats from that recommended in exhibit 9.
Mr. Kurtz testified that on Monday when he was giving the instruction, one from each group would go up all at the same time to the respective mats. Both he and Mrs. Beveridge would see that only one individual was at each mat when the students were to commence their swings. While the students were shooting their two or three balls, he would walk up and down in the back of them, more or less patrolling to make sure everything was okay. They walked the students through the hitting of the first ball. The second ball the students would hit on their own. In the instruction, he followed the curriculum guide, which is exhibit 9.
After each person had hit his three balls, he was supposed to lay his club down on the carpet and go back to his group and sit down. After all the stations had been cleared and no one else was standing, the next golfer would be told to go out and gather the wiffle balls, bring them back, and set them on the carpet, standing there by the proper mat. Then when that group had gathered all the balls and the designated students were standing at their respective mats, they would go through the same procedure again.
It is evident the instruction procedure used Monday was not followed on Wednesday. If it had been, the instructor would have observed the dilemma of the deceased and given him the instruction he had missed. Also, the students would not have been assisting one another.
Mr. Haley testified he had received no instruction from any of the regular teachers or faculty prior to the commencement of the class, nor did he have a lesson plan *686 because Mrs. Beveridge was going to handle that. He further stated he gave no oral instruction to any of the students as a whole. He recognized he was teaching unskilled young people in a game dealing with potentially dangerous instruments. At the time David was injured, Haley was at the fifth mat, giving some individual instruction. Haley testified that if he had seen another student approach the mat, he would have directed him to sit down. At the time in question his attention was diverted from those students who were supposed to be observing rather than using the clubs. When he was giving specialized instruction the only persons he was seeing were the individuals who were using that particular mat he was working with. Haley was asked the following question: "`Who told you afterinstructed you, if anybody, that once the instructions started on the mat that you were to lead the group from center court and go down and pass in review, more or less, in front of the mats, and if the students needed help to give them help. A. Who told me personally to do that? Q. Yes. A. No one.'"
Plaintiff called a retired school gym teacher who had a B.A. degree in physical education. He had been an instructor in golf until he entered the naval service. He played golf regularly, besides teaching and supervising the instruction of the sport. He knew, understood, and appreciated the basic techniques used in pursuing the sport of golf. He would have used the procedure outlined in exhibit 9 rather than that used on the occasion of the accident. He testified the teacher should be supervising and keeping an eye on all the students using the mats; that if he noticed a boy or girl having difficulty or needing specialized instruction, the appropriate way would be to blow the whistle, call the class to a halt, and stop the children from talking or engaging in conversation, if any, on the bleachers, so as to gain their control and attention. Then he would demonstrate to the one student in need while all students, those seated and those standing by the mats, would watch and listen, and thereby, in effect, give a public lesson to all in attendance.
Mr. Kurtz and Mrs. Beveridge testified they did not use the procedure outlined in exhibit 9 because they did not want the wiffle balls hit toward other students. They also felt there was a danger of a golf club flying loose. Mrs. Beveridge also envisioned a problem with wiffle balls going underneath the bleachers if they were hit across the width of the gym.
In determining the sufficiency of the evidence to sustain a judgment, it must be considered in the light most favorable to the successful party. Every controverted fact must be resolved in his favor and he is entitled to the benefit of every inference that can reasonably be deduced from the evidence. Daniels v. Andersen, 195 Neb. 95, 237 N.W.2d 397 (1975).
In an action for negligence, the burden is on the plaintiff to show that there was a negligent act or omission by the defendant and that it was a proximate cause of the plaintiff's injury or a cause which proximately contributed to it. Hosford v. Doherty, 198 Neb. 211, 252 N.W.2d 154 (1977). Negligence must be measured against the particular set of facts and circumstances which are present in each case. Krehnke v. Farmers Union Co-Op Assn., 199 Neb. 632, 260 N.W.2d 601 (1977).
Negligence is defined as doing something which an ordinary, prudent person would not have done under similar circumstances or failing to do something which an ordinary, prudent person would have done under similar circumstances. Sacco v. Gau, 188 Neb. 808, 199 N.W.2d 605 (1972).
Under the Political Subdivisions Tort Claims Act, trial is to the court without a jury, section 23-2406, R.R.S.1943, and on appeal the findings of the trial court will not be disturbed unless clearly wrong. Buttner v. Omaha P. P. Dist., 193 Neb. 515, 227 N.W.2d 862 (1975).
Recovery in this case is sought on the ground of lack of supervision. Where lack of supervision by an instructor is relied on to impose liability, such lack must appear *687 as the proximate cause of the injury, with the result that the liability would not lie if the injury would have occurred notwithstanding the presence of the instructor.
In the instant case, we are dealing with a ninth grader who had never before swung a golf club. The instruction was conducted indoors, in close quarters. There was some testimony, which the trial court could have accepted, that the physical arrangement, which was contrary to defendant's suggestion, as indicated by exhibit 9, would have prevented the opportunity for injury if followed. There is a question as to whether there was adequate safety instruction regarding the use of a golf club prior to the commencement of the class at which the fatal injury occurred. There is evidence, which the court could have accepted, that on the day the accident occurred the teaching procedure outlined by the regular instructor was not followed by the student teacher. The record would also indicate the student teacher may not have been properly informed as to the procedure to be followed. There is no question the trial judge could have found that, at the very best, there was ineffective observation and attention on the part of the student teacher when ordinary care or supervision would have prevented the occurrence which resulted in the death of David. In Scarborough v. Aeroservice, Inc., 155 Neb. 749, 53 N.W.2d 902 (1952), we held: "Inattention to the duty to exercise care in a situation which reasonably may be regarded as hazardous is negligence, notwithstanding the act or omission involved would not in all cases, or even ordinarily, be productive of injurious consequences.
"The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care."
In this instance, working with ninth graders, who were not familiar with the rules of golf, and in the case of the deceased, who had never before been exposed to the game, includes a duty to anticipate danger that is reasonably foreseeable.
We have no difficulty in finding that the lack of supervision was a proximate cause of the death of David. "Proximate cause" as used in the law of negligence is that cause which in the natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury and without which the injury would not have occurred. Daniels v. Andersen, 195 Neb. 95, 237 N.W.2d 397 (1975).
Defendant contends that even if it were guilty of negligence its negligence was superseded by that of Mark Kreie, decedent's classmate, and Kreie's negligence was an efficient intervening cause which produced the injury. In Libbey-Owens Ford Glass Co. v. L & M Paper Co., 189 Neb. 792, 205 N.W.2d 523 (1973), we said: "Generally, the effect of an intervening negligent act is tested by determining whether it was such as might reasonably have been foreseen as a consequence of the claimed negligence of the original actor." In that same opinion we stated: "The law does not require precision in foreseeing the exact hazard or consequence which happens. It is sufficient if what occurs is one of the kind of consequences which might reasonably be foreseen." There should be no question about foreseeability in this case. If defendant's employees had exercised proper supervision, the death would not have occurred.
Defendant further argues that the deceased is guilty of contributory negligence. One who is capable of understanding and discretion and who fails to exercise ordinary care and prudence to avoid obvious danger is negligent or contributorily negligent. Garcia v. Howard, 200 Neb. 57, 262 N.W.2d 190 (1978). In Caradori v. Fitch, 200 Neb. 186, 263 N.W.2d 649 (1978), we held: "A minor is held to the exercise of that degree of care which an ordinarily prudent child of the same capacity to appreciate and avoid danger would use."
Whether or not a minor 14 years of age is of sufficient knowledge, discretion, *688 and appreciation of danger that he may be subject to the defense of contributory negligence is generally a question of fact for the jury. Sacca v. Marshall, 180 Neb. 855, 146 N.W.2d 375 (1966). The trial court in this instance must have found the deceased was not contributorily negligent. The golf instruction was a required subject. David, a ninth grader, had no understanding of the game and the record is not clear that he was properly warned of the apparent danger in the sport. If the testimony of Mark Kreie is accepted, Mark was complying with the directions of Mrs. Beveridge and giving help to another student. The mere fact there is a recognized amount of danger in the activity by reason of a swinging club is not contributory negligence unless the knowledge of the danger is made known to the child. The doing of an act with appreciation of the amount of danger is necessary in order to say as a matter of law a person is negligent. It cannot be said that deceased had sufficient knowledge of the danger involved, considering the fact he was not familiar with the game of golf and had never before had a golf club in his hands. He had not attended the first class where instruction and practice were provided. He had not received any instruction on any aspect of the game by any teacher prior to his attempted use of the club. The only instruction he received was that provided by the fellow student who struck the fatal blow. On the record in this case, we cannot say that the findings of the trial court are clearly wrong.
Defendant's last assignment is that the award is excessive. Since Selders v. Armentrout, 190 Neb. 275, 207 N.W.2d 686 (1973), the rule in this state has been that the measure of damages for the wrongful death of a minor child includes the loss of society, comfort, and companionship of the child.
Defendant seeks to compare this case with Vandenberg v. Langan, 192 Neb. 779, 224 N.W.2d 366 (1974), in which the parents were awarded $32,650 in general damages for the loss of their 16-year-old son who was described in the opinion as being "a very unusual youth, with great potential for a bright and promising future, both athletically and scholastically." They argue the decedent in the present case, who was 14 years of age at the time of his death, was not an exceptional student and did not have the potential of the deceased in the Vandenberg case. We have heretofore answered the point defendant is attempting to raise. In Caradori v. Fitch, 200 Neb. 186, 263 N.W.2d 649 (1978), in affirming a jury verdict of $40,000 for the death of an 11-year-old girl, we stated: "We will not enter into a discussion in which we compare the relative accomplishments of deceased children in wrongful death actions. A verdict may be set aside as excessive by the trial court or on appeal when, and not unless, it is so clearly exorbitant as to indicate that it was the result of passion, prejudice, mistake, or some means not apparent in the record, or it is clear that the jury disregarded the evidence or rules of law."
The judgment of the trial court is affirmed.
AFFIRMED.
COLWELL, District Judge, dissenting.
I respectfully dissent on the issue of contributory negligence.
David Wayne Brahatcek was a normal, healthy, responsible 14-year-old boy who had a part-time job with Samson Construction Co., Omaha, Nebraska. On the day of the fatal accident he attended the golf class instruction, which included the subject of safety. He followed instructions given concerning his waiting to take his turn and then advancing alone to the mat where he held the club and attempted to use it. He had the opportunity to examine the golf club and become aware of its size and weight. After fellow student Kreie briefly explained the fundamentals, Brahatcek retreated to the side and rear from Kreie about ten feet, and Kreie informed him that he would take two practice swings with the club and then hit the ball. After two practice swings, Kreie advanced further *689 away from Brahatcek towards the ball and hit it. Thereafter, in some unexplained circumstance, Brahatcek came into the area of the golf swing arc and he was struck, causing his tragic death.
Considering these facts and circumstances, Brahatcek had an opportunity for knowledge and appreciation of possible injury to him. However, he failed to exercise ordinary and reasonable care to avoid danger and injury to himself. Bear v. Auguy, 164 Neb. 756, 83 N.W.2d 559. Brahatcek was negligent to a degree more than slight.
The golf class included group and personal instruction and student participation. This same circumstance occurs daily in all schools, whether it be sport programs or the curriculum related to science, home economics, shop, agriculture, mechanics, and other courses, many involving potential injury to students. The standard of care of the defendant and its teachers here does not require continuous and direct supervision and surveillance of each student. The test is what a person of ordinary prudence, charged with the same duties involved, would exercise under the same circumstances. Lueck v. City of Janesville, 57 Wis.2d 254, 204 N.W.2d 6; Woodsmall v. Mt. Diablo Unified School Dist., 188 Cal.App.2d 262, 10 Cal.Rptr. 447; Fagan v. Summers, 498 P.2d 1227 (Wyo.); Berg v. Merricks, 20 Md.App. 666, 318 A.2d 220.
Although the record could support a finding by the trial court that defendant was negligent, such negligence was less than gross.
The negligence of Brahatcek was more than slight and the negligence of the defendant was less than gross. Plaintiff's petition should be dismissed. Main v. Sorgenfrei, 174 Neb. 523, 118 N.W.2d 648.
The judgment of the trial court was clearly wrong and it should be reversed.
McCOWN, J., joins in this dissent.