320 N.W.2d 748 (1982)
211 Neb. 820
Bruce E. SHELTON; Bruce E. Shelton, in his capacity as Personal Representative of the Estate of Chad E. Shelton; Sallie A. Shelton; Sandra Johnson Marchant, as best friend of Sherrie Johnson; and Sandra Johnson Marchant, in her capacity as Personal Representative of the Estate of Duane N. Johnson, Appellants,
v.
BOARD OF REGENTS OF the UNIVERSITY OF NEBRASKA et al., Appellees.
Nos. 44130, 44131, 44132, 44133 and 44134.
Supreme Court of Nebraska.
June 11, 1982.
*750 Steven E. Achelpohl and Edward F. Pohren, of Dwyer, O'Leary & Martin, P. C., Omaha, for appellants.
John R. Douglas, of Cassem, Tierney, Adams, Gotch & Douglas, Omaha, for appellees.
Heard before KRIVOSHA, C. J., and BOSLAUGH, McCOWN, CLINTON, WHITE, and HASTINGS, JJ.
KRIVOSHA, Chief Justice.
This appeal involves five separate cases brought on behalf of the victims of a poisoning. The cases were consolidated for argument and decision before this court. The trial court sustained demurrers filed by the appellees, Board of Regents of the University of Nebraska (Board of Regents) and Eugene C. Eppley Institute for Research in Cancer and Allied Diseases (Eppley Institute). Each of the appellants in the above-entitled cases elected to stand on his or her amended petition to which the demurrers had been filed. Accordingly, the trial court dismissed each of the actions and appeal was perfected to this court. We affirm.
Each of the actions, which are in all respects identical except for the name of the plaintiff, was filed pursuant to the provisions of the State Tort Claims Act, Neb.Rev.Stat. §§ 81-8,209 et seq. (Reissue 1976). Appellants are members or the personal representatives of members belonging to two families from Omaha, Nebraska, who were involved in a poisoning incident in 1978. The poisoning involved a former employee of the Eppley Institute, Steven Roy Harper. The carcinogenic agent, dimethyl nitrosamine (the poisonous drug), was taken by Harper from the Eppley Institute while Harper was employed there in 1978, though it was used by Harper against the various appellants following his discharge from employment. Harper was convicted of murder as a result of the deaths caused by the poisonings. See State v. Harper, 208 Neb. 568, 304 N.W.2d 663 (1981).
Because these cases come to us following the sustaining of demurrers we have *751 nothing more before us than the allegations of the amended petitions. Clark & Enersen, Hamersky, S., B. & T., Inc. v. Schimmel Hotels Corp., 194 Neb. 810, 235 N.W.2d 870 (1975). For purposes of our examination we must accept as true all facts well pleaded. Gilbert v. Vogler, 197 Neb. 454, 249 N.W.2d 729 (1977). We do not, however, accept as true facts not well pleaded or conclusions of law or of the pleader. Root v. School Dist. No. 25, 184 Neb. 570, 169 N.W.2d 464 (1969); Berigan Bros. v. Growers Cattle Credit Corp., 182 Neb. 656, 156 N.W.2d 794 (1968).
The amended petitions allege that in 1973 and 1974 Harper had an emotional relationship with Sandra Johnson Marchant (Mrs. Marchant). Mrs. Marchant broke off the relationship and married Duane Johnson. On June 21, 1975, after attempting to persuade Mrs. Marchant to leave her husband, Duane Johnson, Harper attempted to kill her and her husband and the other members of her family with a shotgun blast. Several members of Mrs. Marchant's family were injured by the shotgun blast, and as a result Harper pled guilty to the crime of intent to kill, wound, or maim. On December 6, 1976, he was sentenced to an indefinite term of from 1 to 5 years in the Nebraska State Penitentiary.
The amended petitions further allege that Harper was thereafter paroled on November 16, 1977, and was on parole when he was employed by the Eppley Institute. Appellants allege that despite Harper's previous criminal involvement, he was hired by the Eppley Institute in Omaha, Nebraska, and commenced work as a research technologist on March 1, 1978. The amended petitions allege that Harper's duties at the Eppley Institute were described in his job classification as follows: "1. Handling and some maintenance of rats. 2. Preparation of various diets. 3. Responsibility of feeding rats. 4. Animal autopsies, in particular, preparation of urinary bladder and kidneys for further processing. 5. Assist in biochemical experiments concerned with the peneablility (sic) of the urinary bladder. 6. Observe all safety rules." The amended petitions each specifically allege that Harper's duties did not include working with the poisonous drug.
The amended petitions then allege that, throughout his employment at the Eppley Institute, Harper had access to the poisonous drug, a highly lethal and carcinogenic substance used by the Eppley Institute to induce cancer in rats. The amended petitions allege that the Office of Research Safety of the National Cancer Institute has adopted standards for research involving chemical carcinogens, including the poisonous drug. The standards were then set out in the petition.
The amended petitions further allege that, at all times material during his employment, the Eppley Institute failed to control Harper's access to the poisonous drug. Eppley Institute is charged with having no inventory procedures to monitor the quantities of the drug on hand at any time, nor any way of determining whether carcinogens were being taken from the premises.
Moreover, the amended petitions allege that, during Harper's employment with Eppley Institute, an employee of the institute placed an article on the Eppley Institute's bulletin board, describing a poisoning incident in Germany in which the poisonous drug was used to induce cancer and ultimate death in its victims. Appellants allege that exposing Harper to this article was negligent and was a proximate cause of the injuries and damages to each of the appellants. They further allege that the Eppley Institute failed to exercise due care in investigating the background and history of Harper before hiring him. The amended petitions allege that the Eppley Institute was negligent in four specific ways, to wit, (1) in hiring Harper; (2) in failing to control access to the poisonous drug by Harper; (3) in failing to maintain an inventory of the drug; and (4) in permitting the posting of the article describing the poisonous drug incident which occurred in Germany. The amended petitions allege that each of the acts and omissions described above occurred between March 1, 1978, and August 18, *752 1978, and that as a result of the acts and omissions, the appellants suffered injury and damage.
The amended petitions further contain allegations concerning an alleged duty owed by the appellees to the various appellants. Because, however, we have determined that the amended petitions failed to allege facts from which it could be concluded that the alleged negligence of the appellees was the proximate cause of appellants' injury and damage, we do not address the issue of duty.
The law is clear that one is not always liable to another simply because one has acted in a negligent manner. In order for there to be liability, certain basic elements must be established. In Daniels v. Andersen, 195 Neb. 95, 101, 237 N.W.2d 397, 402 (1975), we observed: "Once the defendant's negligence has been established, it is necessary to find that the plaintiff's injuries were proximately caused by the defendant's negligence."
In discussing what constitutes "proximate cause" in the law of torts, we have said: "Proximate cause, as used in the law of negligence, is that cause which in a natural and continuous sequence, unbroken by an efficient intervening cause, produces the injury, and without which the injury would not have occurred." Weichel v. Lojka, 185 Neb. 819, 824, 179 N.W.2d 112, 115 (1970). See, also, Coyle v. Stopak, 165 Neb. 594, 86 N.W.2d 758 (1957); Kroeger v. Safranek, 161 Neb. 182, 72 N.W.2d 831 (1955).
There are three basic elements which must be found in order to establish proximate cause. In Daniels v. Andersen, supra at 101-02, 237 N.W.2d at 402, we discussed these three elements, saying: "The first requirement is that the negligence be such that `without which the injury would not have occurred,' commonly known as the `but for' rule....
"The second requirement is that the injury be the natural and probable result of the negligence. See 57 Am.Jur.2d, Negligence, § 164, p. 527.
....
"The third requirement is that there be no efficient intervening cause."
We believe that the appellants' amended petitions fail with regard to the third element of proximate cause, and for that reason we need not discuss any of the other elements of proximate cause.
We have frequently discussed what constitutes an efficient intervening cause. An efficient intervening cause is a new and independent force which breaks the causal connection between the original wrong and the injury. Coyle v. Stopak, supra. In Coyle, supra at 606-07, 86 N.W.2d at 768, we further said: " `The causal connection is broken if between the defendant's negligent act and the plaintiff's injury "there has intervened the negligence of a third person who had full control of the situation and whose negligence was such as the defendant was not bound to anticipate and could not be said to have contemplated, which later negligence resulted directly in the injury to the plaintiff." ' " In the instant case, even if we assume that the appellees were negligent in any of the aspects claimed by the appellants (a fact we assume for sake of argument without deciding), we have two subsequent illegal criminal acts of Harper intervening between the alleged negligence of the appellees and the injuries suffered by the appellants. We believe that those two intervening criminal acts were of such nature as to constitute an efficient intervening cause which destroys any claim that the alleged negligence of the appellees was the proximate cause of the appellants' injuries and damage. In Restatement (Second) of Torts § 448 at 480 (1965), we find the following declaration of law: "The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood *753 that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime." We do not believe that the facts in this case justify employing the exception to the rule. There is no allegation made, nor can one be properly inferred, to support a claim that the Eppley Institute realized or should have realized the likelihood of Harper first stealing the poisonous drug and then unlawfully breaking into the Johnson home and placing the poisonous drug into some lemonade and milk which was present in a refrigerator. We believe appellants ask us to make too great a leap of faith in this case.
As noted in Comment a to § 448 of the Restatement at 481: "Under the rule stated in this Section, the actor is not responsible for the harm thus inflicted merely because the situation which his negligence has created has afforded an opportunity or temptation for its infliction."
In an extensive annotation found at 78 A.L.R. 471 (1932), the author notes at 472: "It may be stated as a general rule that when, between original negligence and an accident, there intervenes a wilful, malicious, and criminal act of a third person which causes the injury, but was not intended by the person originally negligent and could not have been foreseen by him, the causal chain between the original negligence and the accident is broken."
We have previously considered the effect of a criminal act as an efficient intervening cause. In the case of Hersh v. Miller, 169 Neb. 517, 99 N.W.2d 878 (1959), the plaintiff sued the defendant for injuries sustained by the plaintiff when the defendant left her motor vehicle unlocked and with the keys in it, in violation of an ordinance of the city of Omaha. In rejecting the claim that the negligence of the defendant in leaving her car unlocked was the proximate cause of the plaintiff's injury, notwithstanding the intervention of the criminal act by a third person, we said at 521-22, 99 N.W.2d at 881-82: " `A party is only answerable for the natural, probable, reasonable, and proximate consequences of his acts; and where some new efficient cause intervenes, not set in motion by him, and not connected with but independent of his acts and not flowing therefrom, and not reasonable in the nature of things to be contemplated or foreseen by him, and produced the injury, it is the dominant cause.' [Citation omitted.]
....
" `* * * the conduct of the thief was an intervening cause which the defendants were not bound to anticipate and guard against.' " To similar effect see K & T Co. v. Woods, 92 N.M. 697, 594 P.2d 745 (1979); City of Mobile v. Largay, 346 So.2d 393 (Ala.1977).
It is fair to say that in the instant cases the proximate cause of the appellants' injuries was Harper's stealing a poisonous drug and unlawfully and criminally breaking into a home and placing the poison in lemonade and milk which was later consumed by the various appellants. Nothing which the appellants claim the Eppley Institute failed to do was in any manner related to those acts, nor could they have been reasonably contemplated by the Eppley Institute. Unlike those cases cited to us by appellants, here we have neither actual knowledge of an employee's propensity for violence or negligent entrustment. Had Eppley Institute made further investigation into Harper's background, it would not have reasonably known that it should not employ Harper to work with rats. Harper's previous crime was in no manner connected with either stealing or with the use of poison. In an extensive annotation entitled "Employer's Knowledge of Employee's Past Criminal Record as Affecting Liability for Employee's Tortious Conduct," reported in 48 A.L.R.3d 359 (1973), the author notes at 361: "Whether the hiring or retention of an employee with a prior criminal record constitutes negligence depends upon the facts and circumstances of each individual case. Thus, it has been held that no finding of negligence was warranted where, although the employer knew about the employee's criminal record, either the employer did not know about the nature of the offense, or the offense was nontortious in character, *754 and where the prior offense was but a single incident which took place several years previously."
Neither the allegations of the amended petitions nor the law generally imposes liability upon an employer whenever he hires a person previously convicted of a felony where, as here, the job for which the employee is hired does not place anyone in a dangerous position merely by reason of the hiring. Every place of employment offers an employee the opportunity to find some item which, if stolen and improperly used, can cause another harm. Shall we hold an office employer liable if a secretary steals a pair of shears and stabs another? Shall we hold a grocery employer liable if one of its stockpersons steals rat poison and injures another? Shall we hold an automotive employer liable if one of its mechanics steals a tire iron and causes injury to another? We do not believe the law goes that far. In each case the unlawful acts of the employee must be considered to be an efficient intervening cause, else every employer becomes an insurer of the public generally. The allegations of the amended petitions regarding Eppley Institute's hiring of Harper are not sufficient to be considered the proximate cause of the appellants' injuries in light of Harper's intervening action in stealing the poison, breaking into the Johnson home, and poisoning the lemonade and milk. Eppley Institute could not have reasonably realized the likelihood that such a situation might occur.
Likewise, the claim that the Eppley Institute failed to maintain an inventory or control access to the poisonous drug does not allege facts from which one may conclude that the negligence, if any, of the Eppley Institute was a proximate cause of the injury unaffected by Harper's intervening criminal acts. Knowing that the poisonous drug was stolen would not have afforded anyone any greater protection. The Eppley Institute would have had no way of knowing that an employee, not assigned to work with the drug, had in fact stolen the drug, and certainly would have had no way of advising the world generally or these appellants specifically of that fact. The purpose of the rules alleged by appellants is intended for the health protection of the employees working with the poison and not the public generally. Knowing that the poison was stolen could not have prevented the injuries which followed as a result of Harper's criminal acts. To impose such a burden upon an employer would be unreasonable.
And, lastly, the matter of posting the article certainly cannot be said to be a proximate cause of appellants' injuries unaffected by an efficient intervening cause. The article was posted by an employee and merely reported a matter of fact. The employer here can no more be held liable than could the publisher of the article. Moreover, there is no claim that but for the article no one would have known of the danger of the poison.
The events involved in this case are indeed sad and tragic. Hindsight might disclose some inkling of the tragedy caused by a disturbed but nevertheless criminal mind. That hindsight is not, however, sufficient in this case to permit this court to say that Eppley Institute could have reasonably realized the likelihood of Harper's criminal acts merely because it hired him to care for experimental rats. No doubt the appellants have suffered. Undoubtedly Harper is liable to them for his actions. Those facts, however, are not sufficient to hold the appellees liable. " `Although the question of proximate cause is ordinarily for the determination of the jury, where... [as alleged here] only one inference can be drawn, it is for the court to declare whether a given act or series of acts is the proximate cause of the injury.' " Egenberger v. National Alfalfa Dehydrating & Milling Co., 164 Neb. 704, 712, 83 N.W.2d 523, 532 (1957).
The acts of the appellees as alleged by the appellants in the amended petitions were not the proximate cause of the appellants' injuries. The trial court was correct in sustaining the demurrers filed to the *755 amended petitions and thereafter dismissing the various amended petitions.
AFFIRMED.
CAPORALE, J., disqualified.