SUSAN STAHLECKER AND DALE STAHLECKER, INDIVIDUALLY
AND AS SPECIAL ADMINISTRATORS OF THE ESTATE OF
AMY M. STAHLECKER, DECEASED, APPELLANTS, V.
FORD MOTOR COMPANY ET AL., APPELLEES.

667 N.W.2d 244

Filed August 8, 2003. No. S-02-1004.

Richard J. Rensch, of Raynor, Rensch & Pfeiffer, P.C., for appellants.

Daniel P. Chesire and Raymond E. Walden, of Lamson, Dugan & Murray, L.L.P., for appellee Bridgestone/Firestone, Inc.

John A. Svoboda, of Gross & Welch, P.C., and George E. Wolf and Paul A. Williams, of Shook, Hardy & Bacon, L.L.P., for appellee Ford Motor Company.

Maren Lynn Chaloupka, of Chaloupka, Holyoke, Hofmeister, Snyder & Chaloupka, for amicus curiae Nebraska Association of Trial Attorneys.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

This is a civil action for damages resulting from the injury and wrongful death of Amy M. Stahlecker (Amy). Appellants, Susan Stahlecker and Dale Stahlecker, parents of the deceased and special administrators of her estate, alleged that during the early morning hours of April 29, 2000, Amy was driving a 1997 Ford Explorer equipped with Firestone Wilderness AT radial tires in a remote area of western Douglas County, Nebraska, when one of the tires failed, rendering the vehicle inoperable. They further alleged that Richard Cook encountered Amy "alone and stranded" as a direct result of the tire failure and that he assaulted and murdered her. The Stahleckers brought this action against Ford Motor Company (Ford), the manufacturer of the vehicle; Bridgestone/Firestone, Inc. (Firestone), the manufacturer of the tire; and Cook. The district court for Dodge County sustained demurrers filed on behalf of Ford and Firestone and dismissed the action as to those parties. We affirm.

## BACKGROUND

In their operative petition, the Stahleckers alleged that on the date of her death, Amy had been driving the Ford Explorer with the permission of its owner when one of the Firestone tires mounted on the vehicle "failed . . . causing the components of the tire to separate causing the Ford Explorer to be inoperable." There is no allegation that Amy sustained any injury as a result of the tire failure itself. Rather, the Stahleckers alleged that immediately after the vehicle became inoperable, Cook "found Amy alone and stranded as a direct result of the failure of the [t]ire and proceeded to abduct, terrorize, rape and murder" her.

The Stahleckers alleged that the failure of the tire "was caused by a defect in the design and/or manufacturing process and/or recommended tire air pressure use" and that Ford and Firestone, as the manufacturers of the vehicle and tire, knew or should have known that their products would be used without close expert testing or inspection. The Stahleckers further alleged that "long before April 29, 2000," Ford and Firestone had actual knowledge of "the defective nature of the Ford Explorer's Firestone tires and

their propensity to unexpectedly blow out causing wide-ranging results that included stranding and rollovers." The Stahleckers alleged that Ford and Firestone withheld this knowledge from consumers and the general public and advertised the Ford Explorer equipped with Firestone tires as "dependable when used under similar circumstances as Amy was using them during the early morning hours of April 29, 2000." They alleged:

[I]t was further promoted and generally understood that the vehicle and tires would help protect its consumers, such as Amy, from encountering dangerous situations which could invite criminal behavior, such as might be encountered in dark parking lots at night or during breakdowns in remote areas and from weather related acts of God, such as blizzards, heavy rain or extreme heat in arid country.

The Stahleckers alleged:

While the specific act of rape and murder of Amy Stahlecker by . . . Cook may not necessarily have been foreseeable by Defendants Ford and Firestone, the potential for similar dangerous situations arising as a result of a breakdown of a Ford Explorer and/or its tires resulting in danger to its consumers and users from criminal activity, adverse weather conditions, inability to communicate with others or any combination thereof, were known and/or should have been known to Defendants Ford and Firestone. This knowledge is evidenced by some of their promotions, advertisements and incorporated design features.

They further alleged:

[The Stahleckers] have reason to believe that at all times material hereto Defendant Ford and Defendant Firestone knew, or, in the exercise of sound safety engineering and marketing of its products knew or should have known that people similarly situated to Amy would rely upon the Ford Explorer and its Firestone tires dependability when those consumers and users would make decisions regarding encountering circumstances of travel in incl[ement] weather or other dangerous circumstances and locations such as those locations and circumstances encountered by Amy Stahlecker on April 29, 2000. Further, [the Stahleckers] have reason to believe that Defendant Ford and Defendant

Firestone had or should have had knowledge, to include statistical information, regarding the likelihood of criminal conduct and/or sexual assault against auto and tire industry consumers as a result of unexpected auto and/or tire failures in general.

The Stahleckers alleged four separate theories of recovery against Firestone and Ford, including negligence, res ipsa loquitur, strict liability, and breach of implied warranty. They also sought recovery from Cook on an intentional tort theory, but no aspect of that claim is before us in this appeal. The damages claimed against all defendants included compensation for

the mental and physical suffering experienced by Amy prior to her death as a result of being abducted, terrorized, raped and murdered and the damages sustained by the [the Stahleckers] for their deprivation of Amy's aid, advice, affection, comfort, assistance, society, companionship and love along with their deprivation of Amy's future contribution to their care, support and maintenance.

The Stahleckers also claimed unspecified general damages and costs.

The district court sustained demurrers filed by Ford and Firestone in response to the Stahleckers' original petition, focusing upon "the issue of whether or not the tortious and criminal acts of Cook were reasonably foreseeable by Ford and . . . Firestone." The court reasoned that while Cook's actions were "independent and intervening and operated upon a situation" allegedly created by the tire failure, that "if Ford and . . . Firestone had no reason to expect intentional tortious or criminal acts by a third person, they are not liable under Nebraska law for the harm caused thereby, even though their negligence afforded the opportunity for such conduct to occur." The court held that a "general awareness on the part of Ford and . . . Firestone . . . that there are bad people in society who do bad things" was insufficient to establish foreseeability. The Stahleckers were granted leave to amend.

The Stahleckers filed an amended petition, which included the allegations we have quoted and paraphrased above. Ford and Firestone again filed demurrers asserting that the amended petition failed to state facts sufficient to constitute a cause of action

against them. The district court sustained these demurrers and dismissed the causes of action against Ford and Firestone without leave to amend, reasoning that the amended petition failed to state causes of action against Ford and Firestone "due to the lack of foreseeability of the actions of [Cook]." In a subsequent order, the district court directed entry of final judgments in favor of Ford and Firestone. The Stahleckers perfected this timely appeal from those judgments and successfully petitioned to bypass the Nebraska Court of Appeals.

## ASSIGNMENTS OF ERROR

The Stahleckers assign, restated, that the district court erred in sustaining the demurrers filed by Ford and Firestone and in dismissing the action as to those parties without leave to amend.

## STANDARD OF REVIEW

■ In an appellate court's review of a ruling on a demurrer, the court is required to accept as true all the facts which are well pled and the proper and reasonable inferences of law and fact which may be drawn therefrom, but not the conclusions of the pleader. *Regier v. Good Samaritan Hosp.*, 264 Neb. 660, 651 N.W.2d 210 (2002); *McCormick v. City of Norfolk*, 263 Neb. 693, 641 N.W.2d 638 (2002).

## ANALYSIS

■ In order to withstand a demurrer, a plaintiff must plead a statement of "facts sufficient to constitute a cause of action." Neb. Rev. Stat. § 25-806(6) (Reissue 1995). We have interpreted this phrase to mean "a narrative of events, acts, and things done or omitted which show a legal liability of the defendant to the plaintiff." *Regier v. Good Samaritan Hosp.*, 264 Neb. at 664, 651 N.W.2d at 213. In determining whether a cause of action has been stated, a petition is to be construed liberally; if, as so construed, the petition states a cause of action, the demurrer is to be overruled. *McCarson v. McCarson*, 263 Neb. 534, 641 N.W.2d 62 (2002); *Malone v. American Bus. Info.*, 262 Neb. 733, 634 N.W.2d 788 (2001). The petition alleges that both Ford and Firestone are liable for the injury and wrongful death of Amy under alternative theories of negligence, res ipsa loquitur, strict liability, and breach of implied warranty.

Res ipsa loquitur is a qualification of the general rule that negligence is not to be presumed. *Bargmann v. Soll Oil Co.*, 253 Neb. 1018, 574 N.W.2d 478 (1998); *Roberts v. Weber & Sons, Co.*, 248 Neb. 243, 533 N.W.2d 664 (1995). However, it is clear that if specific acts of negligence are alleged or there is direct evidence of the precise cause of the accident, the doctrine of res ipsa loquitur is not applicable. *Bargmann v. Soll Oil Co., supra*; *Long v. Hacker*, 246 Neb. 547, 520 N.W.2d 195 (1994). Because the Stahleckers have alleged specific acts of negligence on the part of both Ford and Firestone, the doctrine of res ipsa loquitur is inapplicable to this case.

In *Freeman v. Hoffman-La Roche, Inc.*, 260 Neb. 552, 618 N.W.2d 827 (2000), we noted the developing trend in products liability law of merging the contract theory of breach of implied warranty with tort theories based upon defects in design and manufacturing and failure to warn. We found the underlying reasoning of this trend to be persuasive and therefore considered allegations of breach of implied warranty as falling under the accompanying allegations of design and manufacturing defect. We take the same approach here. Accordingly, we focus our consideration upon whether the pleadings state a cause of action against either Ford or Firestone under negligence and/or strict liability theories. Both of these theories rest upon the allegation that the Firestone tire mounted on the Ford Explorer driven by Amy failed as the result of "a defect in the design and/or manufacturing process and/or recommended tire air pressure use."

NEGLIGENCE

The Stahleckers alleged that Firestone was negligent in failing to design, manufacture, and assemble the tires in question so as to prevent the tread from separating while in operation, in failing to properly and adequately test and inspect the tires after manufacture, in failing to warn and notify users and consumers of the tires of the propensity and potential danger of tread separation, and in failing to promptly recall the defective tires. They further alleged that Firestone knew or should have known of the "dangerous propensities" of the subject tire and that the defect in the tire "was likely to cause the vehicle being driven to be suddenly and unexpectedly incapacitated and inoperable."

The Stahleckers alleged that Ford negligently failed to design, test, and manufacture tires selected for use on its Explorer vehicles or failed to properly oversee and monitor such design, testing, and manufacturing. In addition, they alleged that Ford was negligent in failing to warn consumers of known dangers, failure rates, and defects in tires mounted on Explorer vehicles; in failing to warn of the consequences of the unexpected tire failure; and in failing to recall the tire. The Stahleckers alleged that as the "direct and proximate result" of the negligence of Ford and Firestone, "the subject Ford Explorer was rendered unusable as a result of the failed tire leaving Amy in a foreseeably dangerous situation, which ultimately led to Amy's abduction, rape and murder."

 In order to prevail in a negligence action, a plaintiff must establish the defendant's duty to protect the plaintiff from injury, a failure to discharge that duty, and damages proximately caused by the failure to discharge that duty. *Sharkey v. Board of Regents*, 260 Neb. 166, 615 N.W.2d 889 (2000). The concept of "foreseeability" is a component of both duty and proximate cause, although its meaning is somewhat different in each context. We have noted this distinction in recent cases:

> " 'Foreseeability as a determinant of a business owner's duty of care to its customers is to be distinguished from foreseeability as a determinant of whether a breach of duty is a proximate cause of an ultimate injury. Foreseeability as it impacts duty determinations refers to " 'the knowledge of the risk of injury to be apprehended. The risk reasonably to be perceived defines the duty to be obeyed; it is the risk reasonably within the range of apprehension, of injury to another person, that is taken into account in determining the existence of the duty to exercise care.' " . . . Foreseeability that affects proximate cause, on the other hand, relates to "the question of whether the specific act or omission of the defendant was such that the ultimate injury to the plaintiff" reasonably flowed from defendant's breach of duty. . . . Foreseeability in the proximate cause context relates to remoteness rather than the existence of a duty.' "

*Sharkey v. Board of Regents*, 260 Neb. at 179, 615 N.W.2d at 900, quoting *Knoll v. Board of Regents*, 258 Neb. 1, 601 N.W.2d 757 (1999).

In a products liability action premised upon negligence, the issue is whether a manufacturer's conduct was reasonable in view of the foreseeable risk of injury. *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 509 N.W.2d 603 (1994); *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). We have endorsed the following principle set forth in Restatement (Second) of Torts § 395 at 325 (1965):

> A manufacturer who fails to exercise reasonable care in the manufacture of a chattel which, unless carefully made, he should recognize as involving an unreasonable risk of causing physical harm to those who use it for a purpose for which the manufacturer should expect it to be used and to those whom he should expect to be endangered by its probable use, is subject to liability for physical harm caused to them by its lawful use in a manner and for a purpose for which it is supplied.

Accord *Morris v. Chrysler Corp.*, 208 Neb. 341, 303 N.W.2d 500 (1981). See, also, *Hancock v. Paccar, Inc.*, 204 Neb. 468, 283 N.W.2d 25 (1979); *Rose v. Buffalo Air Service*, 170 Neb. 806, 104 N.W.2d 431 (1960). Likewise, we have recognized a duty on the part of the manufacturer or other seller of a product to adequately warn " ' "about a risk or hazard inherent in the way a product is designed that is related to the intended uses as well as the reasonably foreseeable uses that may be made of the products it sells." ' " *Freeman v. Hoffman-La Roche, Inc.*, 260 Neb. 552, 570, 618 N.W.2d 827, 841 (2000), quoting *Rahmig v. Mosley Machinery Co., supra.* Thus, by alleging that Ford and Firestone failed to exercise reasonable care in designing and manufacturing their tires, and failed to warn users of potential tire defects, the Stahleckers have alleged the existence of a legal duty and a breach thereof by both Ford and Firestone. The remaining issue is whether the breach of this duty was the proximate cause of Amy's harm.

The proximate cause of an injury is "that cause which, in a natural and continuous sequence, without any efficient, intervening cause, produces the injury, and without which the injury would not have occurred." *Haselhorst v. State*, 240 Neb. 891, 899, 485 N.W.2d 180, 187 (1992). Stated another way, a plaintiff must meet three basic requirements in establishing proximate

cause: (1) that without the negligent action, the injury would not have occurred, commonly known as the "but for" rule; (2) that the injury was a natural and probable result of the negligence; and (3) that there was no efficient intervening cause. *World Radio Labs. v. Coopers & Lybrand*, 251 Neb. 261, 557 N.W.2d 1 (1996); *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995); *Merrick v. Thomas*, 246 Neb. 658, 522 N.W.2d 402 (1994).

As to the first requirement, a defendant's conduct is the cause of the event if "the event would not have occurred but for that conduct; conversely, the defendant's conduct is not a cause of the event if the event would have occurred without it." *Haselhorst v. State*, 240 Neb. at 899, 485 N.W.2d at 187. In this case, accepting as true the allegations of the operative amended petition, the first element of proximate causation is established. The petition alleges that Cook "found Amy alone and stranded as a direct result of the failure of the Firestone Wilderness AT Radial Tire and proceeded to abduct, terrorize, rape and murder Amy." Firestone concedes that under the factual allegations of the Stahleckers' petition, that " 'but for' " the failure of its tire, Amy would not have been at the place where she was assaulted and murdered. Brief for appellee Firestone at 21.

The second and third components of proximate causation are somewhat interrelated. Was the criminal assault and murder the "natural and probable" result of the failure to warn of potential tire failure, or did the criminal acts constitute an effective intervening cause which would preclude any causal link between the failure to warn and the injuries and wrongful death for which damages are claimed in this action? An efficient intervening cause is a new, independent force intervening between the defendant's negligent act and the plaintiff's injury. *Fuhrman v. State*, 265 Neb. 176, 655 N.W.2d 866 (2003). This force may be the conduct of a third person who had full control of the situation, whose conduct the defendant could not anticipate or contemplate, and whose conduct resulted directly in the plaintiff's injury. See *id.* An efficient intervening cause must break the causal connection between the original wrong and the injury. *Id.*; *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997). In *Shelton v. Board of Regents*, 211 Neb. 820, 320 N.W.2d 748 (1982), we

considered whether criminal conduct constituted an intervening cause. *Shelton* involved wrongful death claims brought on behalf of persons who were poisoned by a former employee of the Eugene C. Eppley Institute for Research in Cancer and Allied Diseases (the Institute). In their actions against the Institute and related entities, the plaintiffs alleged that despite the fact that the former employee had a prior criminal conviction involving an attempted homicide, the Institute hired him as a research technologist and gave him access to the poisonous substance which he subsequently used to commit the murders. The plaintiffs alleged that the Institute was negligent in hiring the employee, in allowing him to have access to the poisonous substance, and in failing to monitor its inventory of the substance. The plaintiffs further alleged that the Institute's negligence was the proximate cause of the injuries and deaths of the victims. The district court sustained a demurrer filed by the Institute and dismissed the actions. This court affirmed, holding as a matter of law that the criminal acts of stealing the drug and administering it to the victims "were of such nature as to constitute an efficient intervening cause which destroys any claim that the alleged negligence of the [Institute] was the proximate cause of the appellants' injuries and damage." *Id.* at 826, 320 N.W.2d at 752. In reaching this conclusion, we relied upon Restatement (Second) of Torts § 448 at 480 (1965), which states the following rule:

> The act of a third person in committing an intentional tort or crime is a superseding cause of harm to another resulting therefrom, although the actor's negligent conduct created a situation which afforded an opportunity to the third person to commit such a tort or crime, unless the actor at the time of his negligent conduct realized or should have realized the likelihood that such a situation might be created, and that a third person might avail himself of the opportunity to commit such a tort or crime.

Accord *Shelton v. Board of Regents, supra.* We held that the employee's criminal acts were the cause of the injuries for which damages were claimed and that "[n]othing which the [plaintiffs] claim the . . . Institute failed to do was in any manner related to those acts, nor could they have been reasonably contemplated by the . . . Institute." *Id.* at 827, 320 N.W.2d at 753.

We have, however, determined in certain premises liability cases and in cases involving negligent custodial entrustment that the criminal act of a third person does not constitute an efficient intervening cause. For example, in *Sacco v. Carothers*, 253 Neb. 9, 567 N.W.2d 299 (1997), a patron of a bar was seriously injured by another patron in the parking lot after the two were instructed by the bartender to take their argument "outside." The injured patron sued the owner of the bar, alleging that the owner negligently failed to contact law enforcement, maintain proper security on the premises, and properly train his personnel. We reversed a judgment on a jury verdict in favor of the owner because of error in giving an intervening cause instruction. We reasoned that

> [b]ecause the harm resulting from a fight is precisely the harm against which [the owner] is alleged to have had a duty to protect [the patron], the "intervention" of [the other patron] cannot be said to be an independent act that would break the causal connection between [the owner's] negligence and [the patron's] injuries.

*Id.* at 15, 567 N.W.2d at 305. We employed similar reasoning in *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs.*, 248 Neb. 651, 538 N.W.2d 732 (1995), and *Haselhorst v. State*, 240 Neb. 891, 485 N.W.2d 180 (1992), both of which involved negligent placement of juvenile wards of the state in foster homes without disclosure of their known histories of violent acts. In each of those cases, we held that criminal acts of foster children perpetrated upon members of the foster parents' households could not be asserted as intervening causes to defeat liability for the negligent placement. Similarly, we recently held that a psychiatric patient's criminal assault upon a nurse was not an intervening cause as to the negligence of a state agency which breached its duty to disclose the violent propensities of the patient at the time of his admission to the hospital where the assault occurred. *Fuhrman v. State*, 265 Neb. 176, 655 N.W.2d 866 (2003). These decisions were based upon the principle articulated in *Anderson/Couvillon* that "[o]nce it is shown that a defendant had a duty to anticipate an intervening criminal act and guard against it, the criminal act cannot supersede the defendant's liability." 248 Neb. at 660, 538 N.W.2d at 739.

■ This principle requires that we determine whether the duty owed to Amy by Ford and Firestone, as manufacturers and sellers of the allegedly defective tires, included a duty to anticipate and guard against criminal acts perpetrated against the users of such tires. The question of whether a duty exists at all is a question of law. *Cerny v. Cedar Bluffs Jr./Sr. Pub. Sch.*, 262 Neb. 66, 628 N.W.2d 697 (2001). It necessarily follows that defining the scope of an existing duty is likewise a question of law. See, *id.*; Dan B. Dobbs, The Law of Torts § 230 (2000).

Generally, we have recognized a duty to anticipate and protect another against criminal acts where the party charged with the duty has some right of control over the perpetrator of such acts or the physical premises upon which the crime occurs. In *Anderson/Couvillon v. Nebraska Dept. of Soc. Servs., supra,* and *Haselhorst v. State, supra,* the state agency responsible for foster placement of the juvenile wards had a duty to warn foster parents of the wards' known histories of violent and abusive behavior. Similarly, in *State v. Fuhrman, supra,* a state agency which placed a ward in a psychiatric hospital had a duty to make disclosures regarding the ward's known violent and dangerous propensities for the benefit of the hospital's employees. In *Doe v. Gunny's Ltd. Partnership,* 256 Neb. 653, 593 N.W.2d 284 (1999), we recognized a duty on the part of the owner of business premises to protect invitees from criminal assault where there had been documented criminal activity in the immediate vicinity of the premises. In *Knoll v. Board of Regents,* 258 Neb. 1, 601 N.W.2d 757 (1999), we held that a university had a duty to protect a student from physical hazing conducted in a fraternity house where similar incidents were known to have occurred previously. Similarly, in *Sharkey v. Board of Regents,* 260 Neb. 166, 182, 615 N.W.2d 889, 902 (2000), we held that a university "owes a landowner-invitee duty to its students to take reasonable steps to protect against foreseeable acts of violence on its campus and the harm that naturally flows therefrom." However, we have adopted Restatement (Second) of Torts § 315 at 122 (1965), which provides:

> There is no duty so to control the conduct of a third person as to prevent him from causing physical harm to another unless

> (a) a special relation exists between the actor and the third person which imposes a duty upon the actor to control the third person's conduct, or
>
> (b) a special relation exists between the actor and the other which gives to the other a right to protection.

See, *Bartunek v. State, ante* p. 455, 666 N.W.2d 435 (2003); *Popple v. Rose*, 254 Neb. 1, 573 N.W.2d 765 (1998); *Hamilton v. City of Omaha*, 243 Neb. 253, 498 N.W.2d 555 (1993).

We have found no authority recognizing a duty on the part of the manufacturer of a product to protect a consumer from criminal activity at the scene of a product failure where no physical harm is caused by the product itself. One court has specifically held that a product failure which furnishes an opportunity for an intentional act resulting in harm is not, as a matter of law, the proximate cause of such harm. *Kleen v. Homak Mfg. Co., Inc.*, 321 Ill. App. 3d 639, 749 N.E.2d 26, 255 Ill. Dec. 246 (2001). *Kleen* was a wrongful death action against the manufacturer and retailer of a firearm safe. The plaintiff, whose adult child committed suicide using a weapon removed from the safe, alleged that the safe was defective because it incorporated a weak lock which could be easily broken and that the defect was therefore the proximate cause of the death. In rejecting this claim under both negligence and strict liability theories, the court determined that the alleged defect was only a passive condition which allowed the injury to occur and that the deceased's voluntary act of removing the weapon from the safe and using it to end his life was an independent intervening act which was the sole proximate cause of his death.

The Stahleckers argue that a duty to anticipate criminal acts associated with product failure arises from their allegations that Ford and Firestone knew or should have known of "the potential for similar dangerous situations arising as a result of a breakdown of a Ford Explorer and/or its tires resulting in danger to its consumers and users from criminal activity, adverse weather conditions, inability to communicate with others or any combination thereof." They also allege that Ford and Firestone had or should have had "knowledge, to include statistical information, regarding the likelihood of criminal conduct and/or sexual assault against auto and tire industry consumers as a result of

unexpected auto and/or tire failures in general." Assuming the truth of these allegations, the most that can be inferred is that Ford and Firestone had general knowledge that criminal assaults can occur at the scene of a vehicular product failure. However, it is generally known that violent crime can and does occur in a variety of settings, including the relative safety of a victim's home. The facts alleged do not present the type of knowledge concerning a specific individual's criminal propensity, or right of control over premises known to have been the scene of prior criminal activity, upon which we have recognized a tort duty to protect another from criminal acts. The Stahleckers have not and could not allege any special relationship between Ford and Firestone and the criminal actor (Cook) or the victim of his crime (Amy) which would extend their duty, as manufacturers and sellers of products, to protect a consumer from harm caused by a criminal act perpetrated at the scene of a product failure. In the absence of such a duty, *Shelton v. Board of Regents*, 211 Neb. 820, 320 N.W.2d 748 (1982), controls and requires us to conclude as a matter of law that the criminal assault constituted an efficient intervening cause which precludes a determination that negligence on the part of Ford and Firestone was the proximate cause of the harm which occurred.

### STRICT LIABILITY

In a cause of action based on strict liability in tort, the question involves the quality of the manufactured product, that is, whether the product was unreasonably dangerous. *Freeman v. Hoffman-La Roche, Inc.*, 260 Neb. 552, 618 N.W.2d 827 (2000); *Rahmig v. Mosley Machinery Co.*, 226 Neb. 423, 412 N.W.2d 56 (1987). To recover on a claim of strict liability, a plaintiff must prove by a preponderance of the evidence:

"(1) The defendant placed the product on the market for use and knew, or in the exercise of reasonable care should have known, that the product would be used without inspection for defects; (2) the product was in a defective condition when it was placed on the market and left the defendant's possession; (3) *the defect is the proximate or a proximately contributing cause of plaintiff's injury sustained while the product was being used in the way and for*

> *the general purpose for which it was designed and intended*; (4) the defect, if existent, rendered the product unreasonably dangerous and unsafe for its intended use; and (5) *plaintiff's damages were a direct and proximate result of the alleged defect.*"

(Emphasis supplied.) *Kudlacek v. Fiat S.p.A.*, 244 Neb. 822, 829, 509 N.W.2d 603, 610 (1994). This theory of recovery has been adopted by this court from Restatement (Second) of Torts § 402 A (1965). See, *Freeman v. Hoffman-La Roche, Inc., supra*; *Kohler v. Ford Motor Co.*, 187 Neb. 428, 191 N.W.2d 601 (1971).

While the operative petition in this case alleges facts which, if proved, would establish that both Ford and Firestone breached their duty not to place defective products on the market, we do not regard that duty as generally encompassing an obligation on the part of a manufacturer of a passenger vehicle or tire to anticipate and guard against criminal acts of third parties. As we have noted above, the injuries and death for which damages are sought in this action were not caused by a defective product itself, but, rather, by a criminal who encountered the victim at the scene of a vehicular product failure. These circumstances are analogous to the facts in *Williams v. RCA Corp.*, 59 Ill. App. 3d 229, 376 N.E.2d 37, 17 Ill. Dec. 144 (1978), in which a security guard was shot during a robbery after the malfunction of a two-way radio receiver prevented him from summoning assistance. The guard brought an action against the manufacturer of the receiver under a strict liability theory, alleging that the defect in the receiver was the proximate cause of his having been shot by the robber he was attempting to apprehend. In holding, as a matter of law, that the defect was not the proximate cause of the injury, the court reasoned that "[w]hile it might be said that the manufacturer of the two-way receiver could have foreseen that the shooting might conceivably. occur," the criminal act which caused the injury was not objectively foreseeable as a consequence of product failure. *Id.* at 232, 376 N.E.2d at 39, 17 Ill. Dec. at 146. See, also, *Kleen v. Homak Mfg. Co., Inc.*, 321 Ill. App. 3d 639, 749 N.E.2d 26, 255 Ill. Dec. 246 (2001) (holding as matter of law that defective lock on firearm safe not proximate cause of death by suicide under either negligence or strict products liability theories).

For these reasons, we conclude as a matter of law that the intervening criminal acts of Amy's assailant, Cook, negate any causal relationship between the alleged product defects and the injuries and death for which damages are claimed under the theory of strict liability in tort.

## CONCLUSION

Although the operative amended petition alleges sufficient facts to establish that Ford and Firestone negligently placed defective products on the market which caused Amy to become stranded at night in a remote location, it alleges no facts upon which either Ford or Firestone would have a legal duty to anticipate and guard against the criminal acts which were committed at that location by another party. Therefore, the criminal acts constitute an efficient intervening cause which necessarily defeats proof of the essential element of proximate cause.

 Although the determination of causation is ordinarily a question of fact, where only one inference can be drawn, it is for the court to decide whether a given act or series of acts is the proximate cause of the injury. *Tapp v. Blackmore Ranch*, 254 Neb. 40, 575 N.W.2d 341 (1998); *Shelton v. Board of Regents*, 211 Neb. 820, 320 N.W.2d 748 (1982). Because the only reasonable inference which can be drawn from the facts alleged in this case is that Cook's criminal acts constituted an efficient intervening cause, the district court did not err in sustaining the demurrers of Ford and Firestone without leave to amend and in dismissing the action as to them.

AFFIRMED.